J-A07006-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| S.B. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| A.B. | : | No. 1509 MDA 2019 |

Appeal from the Order Entered August 23, 2019
In the Court of Common Pleas of Cumberland County Civil Division at
No(s):  2018-08289

BEFORE:  OLSON, J., DUBOW, J., and McLAUGHLIN, J.

MEMORANDUM BY OLSON, J.:                **FILED: APRIL 14, 2020**

Appellant, S.B. ("Father"), appeals from the order entered in the Court of Common Pleas of Cumberland County on August 23, 2019.  We affirm.

The facts and procedural history of this case are as follows.  Father and A.B. ("Mother") married on October 3, 2000.  During the course of their marriage, they had two children, R.B., born in 2008, and E.B., born in 2011 (collectively, the "Children").  Due to marital difficulties and Father's engagement in an extra-marital affair, the parties began the separation process in 2018.  The parties, however, did not formally separate until August 8, 2018, after a domestic incident that resulted in Mother obtaining a protection from abuse ("PFA") order.[1]

---

[1] After the incident, Father was criminally charged with strangulation, simple assault, and harassment.  Father pled guilty to simple assault on March 7, 2019.

Thereafter, on August 22, 2018, a final PFA order was issued which dictated the custodial provisions for the Children. Mother was awarded primary physical custody, while Father was granted partial physical custody every other Saturday and Sunday from 10:00 a.m. to 6:00 p.m.

Father filed a complaint for custody on August 28, 2018. On August 30, 2018, the trial court entered an order appointing a custody conciliator and scheduling a conciliation conference for September 27, 2018. Trial Court Order, 8/30/18, at 1. A physical custody schedule for the Children was the main point of contention during the conference. Thus, Mother requested a custody evaluation.

Following the conference, the trial court issued two orders outlining the custodial arrangements for the Children. On October 4, 2018, the trial court entered an order granting the parties shared legal custody, Mother primary physical custody, and Father partial physical custody every other Saturday and Sunday from 10:00 a.m. to 6:00 p.m. Trial Court Order, 10/4/18, at *1-4 (un-paginated). The trial court then modified this order on November 20, 2018, and granted Father additional custodial periods. Trial Court Order, 11/20/18, at *1-2 (un-paginated). Specifically, Father was granted physical custody of the Children from 4:00 p.m. to 7:00 p.m. every Monday. *Id.* at *1.

On May 22, 2019, Mother filed a petition for special relief to compel drug testing and prohibit any contact between Father's paramour, A.M., and the Children. Mother's Petition for Special Relief, 5/22/19, at *1-6

- 2 -

(un-paginated). On May 30, 2019, the trial court issued an order prohibiting A.M.'s presence during the periods of Father's custody, requiring Father to submit to random drug testing and to reimburse Mother for drug testing cost if any of Father's drug test were positive. Trial Court Order, 5/30/19, at 1.

The trial court conducted a custody hearing on August 19, 2019. N.T. Custody Hearing, 8/19/19, at 1-107. Both Father and Mother testified, as well as Dr. Deborah Salem, the individual who conducted the custody evaluation. Following their testimony, the trial court awarded the parties shared legal custody, but granted Mother primary physical custody subject to Father's periods of partial physical custody.[2] *Id.* at 99-107; *see also* Trial Court Order, 8/23/19, at *1-7 (un-paginated). This timely appeal followed.[3]

_____

[2] The court granted Father the following custodial periods. During the school year, Father may have physical custody of the Children on alternating weekends from Friday after school until Sunday at 6:00 p.m. Trial Court Order, 8/23/19, at *2 (un-paginated). He is also permitted to have physical custody of the Children on alternating Mondays from after school until 7:30 p.m. *Id.* During the summer time, Father is granted physical custody on alternating weekends from Friday at 6:00 p.m. until Monday at 6:00 p.m., in addition to alternating visits from Monday at 12:00 p.m. until Tuesday at 6:00 p.m. *Id.*

[3] Father filed a notice of appeal on September 17, 2019, without including a concise statement. *See* Pa.R.A.P. 1925(a)(2)(i). This renders Father's notice of appeal defective. *See In re K.T.E.L.*, 983 A.2d 745, 747 (Pa. Super. 2009) (holding that an appellant's failure to file a simultaneous concise statement and notice of appeal in a children's fast track case violates Pa.R.A.P. 905(a)(2) and 1925(a)(2) and, as such, is defective). The trial court, however, issued an order directing Father to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925 within 21 days of its order. Father timely complied. We therefore decline to find Father's "issues waived merely for violating the procedural rules outlined in Pa.R.A.P. 1925(a)(2)(i)." *J.P. v.*

Father raises the following issue on appeal:[4]

[Did the trial court abuse its discretion in awarding Mother primary physical custody of the Children?]

**See generally** Father's Brief at 3-4.

In custody cases, our standard and scope of review are as follows:

In reviewing a custody order, our scope is of the broadest type and our standard [of review] is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

**R.S. v. T.T.**, 113 A.3d 1254, 1257 (Pa. Super. 2015), *appeal denied*, 117 A.3d 298 (Pa. 2015) (citation omitted).

We have stated:

the discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives

---

**S.P.**, 991 A.2d 904, 908 (Pa. Super. 2010) (distinguishing the effect of failing to file a contemporaneous notice of appeal and concise statement and the failure to timely comply with the trial court's order). The trial court issued its 1925(a) opinion on November 22, 2019.

[4] Father raises four issues on appeal. **See** Father's Brief at 3-4. Nonetheless, all of Father's claims essentially challenge the trial court's decision to award Mother primary physical custody of the Children. As such, we will only address the aforementioned issue on the present appeal.

of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

***R.L.P. v. R.F.M.***, 110 A.3d 201, 208 (Pa. Super. 2015) (citation omitted). Thus, we will only find an abuse of discretion "if in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be manifestly unreasonable or the product of partiality, prejudice, bias, or ill will[.]" ***Estate of Sacchetti v. Sacchetti***, 128 A.3d 273, 282 (Pa. Super. 2015) (citation omitted).

With any custody case, the paramount concern is the best interest of the child. ***See*** 23 Pa.C.S.A. §§ 5328, 5338. Upon petition, a trial court may modify a custody order if it serves the best interest of the child. 23 Pa.C.S.A. § 5338. Section 5328(a) sets forth the best interest factors that the trial court must consider. ***See S.W.D. v. S.A.R.***, 96 A.3d 396, 400 (Pa. Super. 2014).

Section 5328(a) outlines the following best interest factors:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent [,] and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational[,] and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a). Although a trial court must consider all of these factors, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *K.T. v. L.S.*, 118 A.3d 1136, 1160 (Pa. Super. 2015) (citation omitted).

Herein, Father argues that the trial court erred in granting Mother primary physical custody of the Children. Specifically, Father claims that the evidence presented at the August 19, 2019 custody hearing demonstrated that he is an able, loving parent and, as such, the trial court should have awarded joint physical custody of the Children.

During the August 19, 2019 hearing, the trial court stated its reasons for the custody award on the record as follows.

> T[he] C[ourt]: Okay. I [am] going to review the custody factors, and then I will be dictating an [o]rder. Many of the provisions will be the same as the October [o]rder[.]
>
> I start by saying that based upon the exhibits I reviewed and the testimony that I [have] heard, I [have] [] two parents that both deeply love their children – no doubt about that – and two parents that are both capable parents. There [is] no doubt about that.
>
> ***
>
> So, the custody factors. [Number one.] Which party is more likely to encourage and permit frequent and continuing contact between the child and [the other] party. This really does [not] favor either party. I did [not] hear any evidence regarding that. Mother did keep the children from [Father,] but she did so for good reasons at the time, and I was impressed by the fact that [Mother] expanded upon [the original] [c]ourt [o]rder [to permit overnight visits] as soon as she got the [custody] evaluation and had a comfort level as to their safety.
>
> Number two. The present and past abuse committed by a party strongly favors [Mother], although we specifically find that [F]ather does not pose a risk to the [C]hildren.
>
> Number three. The parental duties performed by each party on behalf of the [C]hildren. This really favors neither. Both parties co-parented really quite well when they were together.
>
> Number four. The need for stability and continuity. This strongly favors [Mother].

[Number five.] The availability of extended family is not a factor.

[Number six.] The [C]hildren's sibling relationships is not a factor.

[Number seven.] The well-reasoned preference of the [C]hildren based upon the child's maturity and judgment. Frankly, we did [not] talk to the [C]hildren. If this favors [Mother] at all, it [is] only slightly, and that [is] based upon their preferences as shared with [Dr. Salem].

Number eight. The attempts of the parent to turn the child against the other parent. This is not a factor in this case. We are satisfied that neither parent is attempting or has attempted to turn the [C]hildren against the other parent. [Mother's] actions in limiting [F]ather's contact with the [C]hildren was based upon a good-faith concern for their safety in the presence of [F]ather's paramour and her concerns over [F]ather's drug use. We do note that the latter concern we are satisfied is no longer an issue.

Number nine. Which party is more likely to maintain a loving, stable, consistent and nurturing relationship. Again, based upon the testimony of Dr. Salem and her report, this strongly favors [Mother].

Number [ten]. Again, based upon the testimony of [Dr.] Salem, what I heard here today, as well as her report, strongly favors [Mother].

[Number 11.] Proximity of the residences of the parties. The parties only live [one] mile apart.

[Number 12.] Each party's availability to care for the child or make appropriate child care arrangements. This is not a factor.

[Number 13.] The level of conflict between the parties and the willingness and ability of the parties to cooperate with each other. The level of conflict is high, but the separation is relatively recent. I think that I [have] two parents here that, over the long haul, will learn how to cooperate with each other and communicate with each other and lessen that level of conflict.

Number 15. The mental and physical condition of a party or a member of the party or a member of the party's household favors neither.

N.T. Custody Hearing, 8/19/19, at 96-99.

We have reviewed the testimony presented at the custody hearing, as well as the various exhibits admitted into evidence. Additionally, we have reviewed the trial court's findings of fact and Father's brief on appeal. We conclude that the trial court properly considered and weighed the Section 5328 factors without any evidence of bias, ill will, or prejudice to Father. Father is asking this Court to reweigh the evidence and give greater (or lesser) weight to certain of the custody factors. This we cannot and will not do. ***D.R.L. v. K.L.C.***, 216 A.3d 276, 286 (Pa. Super. 2019). The trial court's factual findings are supported by the record and its legal conclusions are free of error. Thus, we affirm the trial court's award of primary physical custody to Mother.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/14/2020